Wright, J,,
delivered the opinion of the Court.
This is an action of ejectment by the plaintiffs, to recover 500 acres of land in the county of Henderson; •and judgment being against them, they have appealed in •error to this Court.
The decision of the cause depends upon a construction of those parts of the will of Samuel Dickens, which relate to the devises and bequests in favor of his daughter, Elizabeth B. Belote, and her children.
They are as follows: “I give and bequeath to John D. Martin, Andrew L. Martin, and Edmund H. Y. Dickens, the survivor, or survivors of them, in trust, for the use and annual support of my daughter, Elizabeth B. Belote, and her children, my stock in the Planters’ Bank of Tennessee, consisting of forty shares; I also give to the said trustees, twenty shares of the residue of my stock in the Farmers’ and Merchants’ Bank of Memphis; the dividends of said sixty shares of Bank stock, if needed, to be applied to the support and .maintenance of my said daughter Elizabeth, and her present and future children, and to their education. I also vest the said trustees with the power to sell the whole, or any part of said bank stock, if they deem it expedient, and to invest the proceeds in that way, they may deem advisable, and to the interest of my said daughter Elizabeth and children.,; .and if not sold *706 before the expiration of the charter of said bants, to revest the said amounts or proceeds, as they may judge best. I give and bequeath to the said trustees for the said uses and purposes, all the property, both real and personal, I may own at the time of my death in the State of Indiana.”
After various devises and bequests to his other children, the testator then proceeds as follows: “ All the rest of my lands and real estate, I give and bequeath to my said sons, Thomas Dickens, Robert F. Dickens,, Samuel B. Dickens, Edmund H. V. Dickens, and to my daughters, Martha L. Bugg, Ann Y. Martin, Sally Martin, Mary Jane Dickens, and to the said trustees, John D. Martin, Andrew L. Martin and Edmund H. V. Dickens, in trust, for the uses and purposes heretofore mentioned, which I give and bequeath to them, my said children and said trustees, and their heirs respectively, to be divided between them respectively. ”
He then provides for the equalization of his estate among his children, because of certain advancements, theretofore made them.
The testator then, in like manner, gives the residue of his personal estate to his children, and to the said trustees of his daughter, Elizabeth B„ Belote and her children, save the estate he had, in the will, given his wife; and provides that all of his children shall be made equal in his estate, the said trustees to represent and be substituted for his said daughter, Elizabeth B. Belote.
Finally: He directs that “ all the property, both real and personal, herein devised to John D. Martin, Andrew L. Martin, and Edmund H. Y. Dickens; they are to *707 hold in trust for the use and benefit of my daughter, Elizabeth R. Belote and her children, present and future, and they, the said trustees, or any two of them, or the survivor, are hereby vested with full power and authority to sell and convey the whole, or any part thereof, for the use and benefit of the said Elizabeth and children, to vest and revest the proceeds, and to manage the whole in any way they may think will promote the interest and comfort of my said daughter Elizabeth. I further give the said trustees power and authority, if they xhink proper, and it be the wish of my said daughter Elizabeth, to allot to any one or more of her children, as they may settle off, a part of the said property, not to exceed a child’s part, before the death of the said Elizabeth; and after her death, the whole of the said property to be equally divided between all her living children, and the heirs of those which may be dead; the said heirs taking their ancestor’s share, or the share the ancestor would have been entitled to if alive; and where advancements have been made, the same to be accounted for by the parties to whom made.”
This will was executed the 14th day of January, 1839, and proven at the August Term, 1840, of the County Court of Madison county, and John D. Martin, the executor named therein, qualified.
The testator died seized of the tract of land in dispute ; and in the division of his estate among his devi-sees, the same was allotted to the said trustees for Mrs. Belote and her children.
The plaintiffs, Samuel D. Belote, William D. Belote, Charles R. Belote, and Reginald H. Belote, are the only children of the said Elizabeth B. Belote living at her *708 death. She died a feme covert, in Weakley county, on the 18th of August, 1849, having been so from the year 1826.
The said Samuel D. Belote was born March the 9th, 1827; William D. Belote, February the 23d, 1829 Charles R. Belote, August the 27th, 1833; and Reginald IT. Belote, May the 2d, 1888.
Elizabeth B. Belote had two children, to-wit: Beatrice R., born the 11th of June, 1842, and Edmund V., born the 2d of November, 1844, both of whom died in infancy, before the death of their mother.
The first question is, what estate did John D. Martin, Andrew L. Martin, and Edmund IT. Y. Dickens, as the trustees of Mrs. Belote and children, take ? What estate Mid she take? And what estate did her children take?
Answer: We think it clear, the trustees took the legal estate to the entire property only during the life of Mrs. Belote; and that at her death, the legal title .and the trusts, of every kind, imposed upon them, by ■/the will, ceased and were at an end; and the entire .estate, legal and equitable, freed of the trusts, become .'invested in the plaintiffs. This is so, by the express language and limitations in the will. The wTords, “ and after her death the whole of the said property to be .equally divided between all her living children,” can have no other meaning. And upon the authority of the cases of Smith et al. v. Thompson, 2 Swan, 386; Aiken et al. v. Smith, 1 Sneed, 304; and Ellis v. Fisher, 3 Sneed, 231; there can, we think, be no question, that 'this is the proper construction of this will.
We think it equally plain, that- at the testator’s .death, Elizabeth B. Belote and the plaintiffs, who were *709 then her only children, took an equitable estate, as tenants in common, in this property, in equal shares of one-fifth each ; her interest being for life only, with remainder, as to that, to them, and their estates in fee; that the estate was subject to open for after born children, and did open upon the births of Beatrice R., and Edmund V., in 1842 and 1844; and that upon their deaths, their shares, by the terms of the will, devolved upon the plaintiffs, so that they owned an equitable estate of six-sevenths; and she, for life, in one-seventh; and the entire estate, legal and equitable, as before stated, being invested in the plaintiffs at their mother’s death. Hill on Trus., eh. 2, sec. 2, pp 65, 66; Haywood's Heirs v. Moore, 2 Hum., 584.
This much, we think, is clear. We are also inclined to the opinion, upon the proof in this record, that Edmund H. V. Dickens, with Andrew L. Martin, must be held to have accepted the trusts of this will for Mrs. Belote and children, and that the decree in the Chancery Court at Huntingdon, in 1844, under the proceeding instituted by John D. Martin, Edmund H. Y. Dickens, and Ann Y. Martin, the widow and executrix of Andrew L. Martin, and by Mrs.. Belote, for herself and children, had the effect' to invest Joseph PI. Talbot with the legal title and trusts of the estate, in the same way and to the same extent as held by his predecessors,. (1 Sneed, 297;) though, as we shall presently see, not with the same poioers. But in the view we take of this case, it cannot be very material to' consider the effect of this decree, since the result is the same, whether the le al estate remained with Edmund H. Y. Dickens, or *710 with him and John D. Martin, or with the heirs of Andrew L. Martin, or went by the decree, to Talbot.
Though the trusts in this will for Mrs. Belote and children were imperative and well defined, and such as a Court of Chancery might execute, yet the power of sale conferred upon the trustees was, in our opinion, discretionary, and a thing entirely of personal trust and confidence in Andrew L. Martin, John D. Martin, and Edmund H. V. Dickens, or any two of them, or the survivor, and could be executed by no one else.
It could not be devolved upon others, either by the deed or will, or other act of the trustees, or be executed by their heirs or personal representatives, because the will did not so provide. Nor could a Court of Chancery, as we apprehend, have forced the trustees to execute it, or execute it, itself, by its clerk and master, or otherwise. Nor could a trustee appointed by the Court do so. But upon the death or refusal to act of the trustees, the power became extinct and gone. And, in this case, if we allow that the legal title and trusts were, lawfully, by the decree, devolved upon Talbot, yet he could not sell this land, the power being incapable of transmission or delegation to him. Hill on Trustees, (edition of 1846, by Trowbat,) 472, 473, 483, 484, 485, 486, 487, 488, 489, 495; Cole v. Wade, 16 Ves., 28-46; 9 Ves., 75, Comb’s case; Alexander v. Alexander, 2 Ves., 643; Coxe v. Day, 13 East., 118; Down v. Worrall, 1 Mylne & Keene, 561; Berger v. Duff, 4 Johns. Ch. Rep., 368. The case of Cole v. Wade, shows that a very clear distinction exists between a power, and the estate and trusts, the subject matter of it; and that while the power *711 may be gone, or ineapable of transmission, the trusts may still remain and be executed.
Iiow could a Court of Chancery here substitute the master, or another trustee, for Andrew L. Martin, John D. Martin, and Edmund H. Y. Dickens ? It was not imperative that a sale should be made. The testator intended that Mrs. Belote and her children should have ¡the benefit of the judgment of these trustees, or some two of them, or the survivor, as to the necessity and propriety of a sale. But how could Talbot’s judgment be their judgment?
We think, therefore, that the sale by him, as against the plaintiffs, was unauthorized, and is void; and that Dudley L. Williams, the purchaser, acquired no title.
The deed to Williams is dated the 7th of April, 1847, and he and those holding under him have had possession ever since; and the suit was instituted the 14th of July, 1855 — more than seven years after the possession — and the question is, as to the effect of the statute of limitations upon the case under the first section of the aet of 1819 — the deed being upon its face— a conveyance in fee-simple.
If we assume that the legal title was either in Talbot or Edmund H. Y. Dickens, in 1847, when the adverse possession began, whether they were, by their acts, estopped to sue or not; or if we say the legal title was in Andrew L. Martin’s heirs, and they were mi juris, and could have sued, still the plaintiffs cannot be barred upon the title of the trustees, because it was only an estate for the life of Mrs. Belote; and, upon the authority of Smith et al. v. Thompson, 2 Swan, and the other cases' above referred to, decided by this *712 Court, the bar could, at most, only have been to that extent. 2 Swan, 386; 1 Sneed, 304; 3 Sneed, 231.
The plaintiffs then, as to the bar of the statute, must stand on their own title. This is a case for land, held by tenants in common, and the rule is different from a contest to recover personal estate. Though the plaintiffs could join in a suit, yet each could sue for his share separately. Barrow’s Lessee v. Navee, 2 Yer., 27. And one may be bound, and the others not. 2 Yer., 227; Shute v. Wade, 5 Yer., 1.
There can, we think, be no doubt that the possession of Williams, the purchaser, was wrongful and tor-tious, as against the plaintiffs, and also as to their mother, from the date of his deed, in April, 1847; and that, in equity, a cause of action and right of suit accrued to all and each of them from that time. The sale by Talbot being a breach of trust and void, they could instantly have sued in equity for a recovery of this land. The act of 1819 bars equitable as well as legal-titles, and operates as an extinguishment of the same, and invests the possessor with a perfect title in fee-simple.
Whenever the equitable owner is sui juris, and can sue, but omits to do so for seven years, the entire title and fee are, by the statute, placed m the possessor. And this is so, though the legal title be in a trustee, and whether he be capable of suing or not.
The statute, therefore, as to six-sevenths of this land, began to run against the plaintiffs from the time the adverse possession commenced, though they were then all infants. And two of them, viz: Samuel D. Belote and William D. Belote, having failed to sue for three [years *713 after they came of age, are barred; but as to Charles R. and Reginald EL Belote, they having sued within three .years after the removal of their disability — the latter, in fact, while yet an infant — are saved by the proviso in the statute. Guion v. Anderson, 8 Hum., 326.
As to the remaining one-seventh, in which Elizabeth B. Belote had an equitable life estate, none of the plaintiffs are barred, because their interest in it was a mere remainder, and they sued within seven years after her death. 8 Hum., 327, 328; Miller v. Miller, Meigs’ Rep., 484.
It follows, also, that the plaintiffs, so far as not barred, have a legal status in Court, and can, at law, maintain this suit — the same having been instituted when their legal' title to the possession was perfect, by the death of their mother.
Whether any of the plaintiffs, after they became sui juris, and with a full knowledge of their rights, and for the purpose of binding themselves, have so adopted and recognized the sale made by Talbot to Williams, by an acceptance of the purchase money paid by him for this land, or otherwise, as to estop them from suing for their unbarred interests in the same, the proof in the record does not show. How this is, will, of course, be open to evidence upon another trial. Cherry v. Newsom, 3 Yer., 369; 4 Hum., 336; 1 Sneed, 313.
The result is, the judgment of the Circuit Court is reversed, and a new trial granted.